SANDWICH ENTERPRISE CO. et al. v. JOLIET MFG. CO.

(Circuit Court of Appeals, Seventh Circuit. January 3, 1899.)

No. 510.

PATENTS—CLAIMS CONSTRUED—IMPROVEMENTS IN CORN SHELLERS.

The Gillet patent, No. 247,388, for improvements in corn shellers, which describes a device for separating the shelled corn from the cobs and husks, consisting of a combination in an elevator of movable combs with loose rods hinged at their lower ends, is novel and discloses patentable invention only in having the rods hinged or movable at their lower ends, and is not infringed by a machine in which the rods are rigidly attached at their lower ends to a cross-bar.

Appeal from the Circuit Court of the United States for the Northern District of Illinois, Northern Division.

This was a suit in equity, brought by the Joliet Manufacturing Company against the Sandwich Enterprise Company, J. L. Rodgers, E. Doan, H. N. Woodard, S. F. Sedgwick, A. D. Wallace, and William Radley for the infringement of a patent. From a decree for complainant, defendants appeal.

John R. Bennett, for appellants

J. W. Munday, for appellee.

Before WOODS and JENKINS, Circuit Judges, and BUNN, District Judge.

BUNN, District Judge. This is a suit brought for the infringement of letters patent No. 247,388, granted to Louis Gillet, September 20, 1881, for improvements in corn shellers. There was a decree in favor of the complainants in the court below sustaining the validity of the patent, finding infringement by defendant, and granting an injunction. The appeal is from this decree, the alleged grounds of error being that the court erred in finding in favor of the validity of the patent and in finding infringement by the defendant. There are four claims in the patent, only three of which are in suit. These claims are as follows:

"(1) In a corn sheller, the combination of a screen of loose rods with movable comb-shaped cob carriers, which support said rods between their teeth, substantially as specified. (2) The combination of the combs, endless chains, sprocket wheels, and screen composed of loose rods, substantially as specified. (3) The combination of the movable combs with the loose rods hinged at their lower ends, whereby the rods are given a slight quiver or motion, for the purpose of better separating the corn from the cobs and husks, substantially as specified."

This device for separating the corn from the cobs and husks is more particularly described in the patent as follows:

"The separator or mechanism for separating the corn from the cobs and husks consists of a screen or series of loose rods, d, hinged at their lower ends to the transverse rod, $d^1$, and resting freely upon the comb-shaped cob carriers, $d^2$, between the teeth thereof, the teeth serving at the same time to keep the rods parallel to and equi-distant from each other. The upper ends of the rods, d, are curved downwards, as shown at $d^3$, so that when the combs pass over the sprocket wheels, $d^4$, the teeth will project the cobs well into the second separator or cob carrier, D, by which the cobs are conveyed to the cob elevator, $B^1$. The combs, $d^2$, are riveted or otherwise secured at each end to corresponding links of the two endless chains, $d^5$, one on each side of the separator, the chains being carried upon and driven by the sprocket wheels, $d^6$. The upper ends of the rods, d, are entirely free, being simply supported by the combs as they are carried along on the endless chains, $d^5$, the teeth of the combs serving to keep the rods apart and in place, and to clean out and keep open the space between the rods, so that the shelled corn will readily drop through the screen, as well as to carry away the cobs and husks. By this arrangement, as the screen is always kept perfectly clean by means of the combs, and as the rods are also loose and slightly movable under action of the moving combs, the corn is very thoroughly separated from the cobs and husks without the necessity of giving to the screen any shaking or vibratory motion, as has heretofore been usually done. By thus dispensing with this vibratory or shaking motion, I am on that account enabled to run the whole machine at a much greater speed; thus not only increasing the capacity of the machine, but also its efficiency. I also thus avoid the wear and tear of the machine due to the vibration of the entire structure, caused by the shaking motion of the separator. The rods, d, I prefer to make round, as that shape is better adapted to allow the corn to fall through the screen. The corn, after it falls through the screen, drops down upon the inclines, $EE^1$, and then into the screw conveyor, $C^5$, whence it passes to the corn elevator, $B^2$, which is provided with a movable spout, $B^3$, for delivering the corn."

It is apparent from the many patents for threshers and corn shellers introduced in evidence by the defendant that Gillet was by no means a pioneer in the art, or even a radical improver; and, if the patent can be sustained, it can only be by giving it a construction which shall confine the complainants to the particular mechanism and structure set forth in the patent. It is in evidence that corn shellers and grain threshers have been patented and in common use for many years, operating substantially in the same manner as the complainants', except in one particular, which relates to the manner of constructing and arranging the screen or series of rods through which the corn is dropped and is separated from the cobs and husks which are being carried away by the moving screen in its ascending course. The specifications in the patent provide that these rods shall be hinged at their lower ends to a transverse rod. The third claim in terms makes this a requisite. The first and second claims do not, in terms, require this particular construction, but we think, as interpreted in the light of the specifications and drawings, they do require it. "Fast" and "loose" are relative terms, and might mean one thing in one place and quite another thing in another place; but in this case the patentee has clearly and succinctly defined what he means by making the rods loose. His rods, forming the sieve or screen, are to be wholly loose at their upper ends, where they are bent over, and loosely affixed to a cross-rod or pintle at their lower end by means of a hinged joint, which will allow a lateral movement from one side to the other of the space between the teeth of the iron comb where the rods are placed. This arrangement was different from anything that had appeared in any thresher or corn sheller up to that time.

The idea seemed to be a good one. At least it was new, and might prove valuable, and probably the mechanism which Gillet devised to effectuate it was patentable. That idea seemed to be to make the rods free, both in their lateral and up and down movement, by leaving them entirely free at the upper ends, and free within a certain space at the lower ends, depending wholly on the teeth of the combs to keep the rods apart and in place, and to clean out and keep open the space between the rods, so that the kernels of corn as they came from the cob would readily drop through the screen, leaving the husks and cobs to be carried away. By this arrangement, as specified in the patent, the screen was kept clean by means of the combs, and the looseness of the rods at both ends allowed them to be movable under the action of the moving screens, thus shaking the corn through the screen, and enabling the operator to dispense with the vibratory or shaking motion of the shoe which had before been used in some of the machines, thus increasing the speed, capacity, and durability of the machine. This was the improvement which Gillet effected, but his assignees, the complainants, in their manufacture of machines, seem to have abandoned the idea of having the rods constituting the screen loose at both ends, as designed in the patent, and are making them fast and immovable at their lower ends, precisely as defendant is doing in its manufacture. Why they have so departed from the patent under which they profess to be manufacturing does not appear. They no doubt had a right to change their manufacture, but it is not so easy to change the patent. If their patent was like their manufactured machines, one of which has been brought into court as an exhibit by the defendant, it is quite evident that the defendant's machine, being substantially like it, would involve an infringement, except for the fact that several of the patents so introduced in evidence, and which were long prior to complainants', present the same thing. The only way in which the complainants' patent can be differentiated from the prior art is by the device for leaving both ends of the wires constituting the screen loose in the manner substantially as stated in the specifications of the patent. The complainants' expert admits—as he must—that the Gillet patent in each of the three claims sued upon requires the lower ends of the wires to be hinged, and they are so shown in the patent and drawings, but he thinks that the defendant's method of attaching the wires by running them through a solid iron, and riveting them down on the under side, making the wires at one end wholly immovable, is the equivalent of the device in the patent which leaves them loose by stringing them upon an iron rod or pintle which allows free lateral movement at the lower end, and something of a vertical one as well; and the circuit court seems to have adopted that view. This, we think, was error. The only possible way the complainants' patent can be sustained is by confining it to the particular improvement and structure set out in the patent. By giving it a construction which would cover the defendant's machine it is brought within the scope of several old patents, which have long ago expired, and the inventions covered by them become public property. The court below, in its opinion, says a piece of leather, or a piece of tough flexible wood, or even metal, may serve to some extent the purposes and function of a hinge. This is, no doubt,

true. The complainants are not confined to any particular form of hinge. Anything that is an equivalent of a hinge, which is properly defined to be a device for joining two pieces in such a manner that one may turn upon the other, might be used. As shown in the patent, the rods are hinged by having eyes formed on their ends, which are strung upon the cross-rod or pintle. The rods of the screens of the defendant's device are rigidly fastened at their lower ends in a rigid cross-bar of iron. In the complainants' patent the teeth of the combs which inclose the wires are depended upon wholly to space the wires, and to keep them in place laterally. Were it not for these, the ten or more wires constituting the screen might be huddled all together in one bunch, while in the defendant's machine they are spaced and kept in proper position by the rigid fastening. We think the one is not the mechanical equivalent of the other. It is quite probable that the complainants found out, after commencing the manufacture of their machines, that making the rods fast and wholly immovable at their lower ends, and depending upon the looseness at their upper ends and the spring and resiliency of the metal for the shaking movement of the rods, was quite sufficient in practice, and constituted the preferable construction. But in altering their device in that way they abandoned the conception of the patent, and conformed their machines substantially to designs which prevailed before the Gillet patent was issued.

The Packer patent, issued in 1878, is for a corn sheller, and shows a screen of rods for the sifting of the corn, like the complainants', except that the lower ends of the rods are made fast by passing through or into a wooden cross-piece. The upper ends are bent over, much like complainants', but, instead of being left loose, are made to rest loosely in holes made in a cross-piece of wood in such a manner as to allow the wire to tip and vibrate to and fro laterally between the teeth of the combs, giving quite as much motion as in the complainants' machine. In operating the specimens of machines shown in exhibits, the Packer exhibit shows even more capacity for movement in the wires than in complainants' machine. This effect seems to be brought about by giving a little more lateral space between the wires and teeth of the combs between which the wires are placed, and by the device, before mentioned, of resting the upper ends of the wires which show a circular bend downward of approximately eight inches loosely in a cross-piece of wood in such a manner as to allow the straight portion of the wires constituting the screen to vibrate freely in a lateral direction between the teeth of the comb, the ends of the wires inserted in the wood acting as a pivot on which the wires turn.

The Woodbury patent, issued to Daniel Woodbury in 1849, is for a grain thresher, but the evidence shows that it could be used, and was used, both for small grain and corn, by regulating the distance between the wires of the screen to accommodate itself to straw or to cobs and husks. The change was merely mechanical, as the complainants' expert admits, and required no invention, but only common sense, to effect it. This patent also shows a device for cleaning the grain, much like the complainants' in all material respects, except that in the defendant's machine and in the Packer patent the wires of the screen are

made fast at the lower ends.    This patent is properly described and distinguished from the complainants' and defendant's devices by defendant's expert, as follows:

"Letters patent of the United States, No. 6,235, issued March 27, 1849, to Daniel Woodbury, for improvement in grain separators, shows and describes, together with certain other elements, the separating device which is substantially exemplified in 'Defendant's Exhibit Model of Separator of Woodbury Patent,' and which in its principle of construction and operation is strictly analogous to the separating device of the complainant's patent in suit, with the single exception that the rods which make up the screen of the separator are not hinged at their lower end, or free to move laterally at their lower end, as are the rods of the screen of the patent in suit.    Referring to the drawing of the Woodbury patent, the separator shown therein comprises a number of inclined parallel rods, d, fastened at their lower ends to a cross-piece, d$^1$, and resting upon a series of comb-like cross-pieces fastened transversely upon an endless web or elevator, b, mounted on rollers, s, s.    The cross-pieces upon the web are provided with teeth which project upward between the rods, d, and are adapted by their movement to carry the straw longitudinally upward upon the rods, and discharge it from their upper ends, the grain in the meantime being dropped downward between the rods, and carried to the shoe of a fanning mill, to be cleaned.    This Woodbury separator embodies a series of comb-shaped rake-bars supported and moved upon an endless carrier, and a rack made up of a series of parallel bars resting upon the comb-shaped rakes, and fastened at their lower ends to a cross-piece set in the frame of the machine, the rods being described as of wood or metal, and so elastic as to spring gently to accommodate themselves to the action of the elevator, and their length being such that they project beyond the upper end of the web, in order that the teeth of the combs may not carry coarse material down around the upper end of the rack."

This patent seems to contain all the elements of the complainants' device except the one thing of hinging the wires of the sieve or screen at the lower ends to effectuate a greater degree of looseness.    It is old, and was common property when the Gillet patent was issued.    If this and the Packer patent do not clearly anticipate the complainants' device, it is only because the wires are not left loose at the lower ends by means of hinges allowing a free lateral movement between the teeth. The defendant's machine, so far as any difference except that which is merely mechanical is concerned, is precisely like the Woodbury patent. We think, also, it is substantially like the Packer patent, as in that patent the wires are left practically loose at the upper ends.    If the defendant's machine infringes the Gillet patent, it follows that the Gillet patent was anticipated by the Packer and Woodbury and other patents in evidence; but we think there is no infringement.

It is further urged that dispensing with the shaking shoe used in some of the prior patents for more efficiently cleaning the corn, differentiates this from the former patents.    But, as that was an independent device, constituting an additional attachment, which might be used or not, we think its omission an unimportant variation, which would not constitute invention, nor affect the character of the invention in question.    The decree is reversed, and the cause remanded, with directions to the court below to dismiss the bill.